IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STATE OF OHIO<br>c/o Ohio Attorney General's Office<br>150 E. Gay Street, 17th Floor<br>Columbus, Ohio 43215, | )<br>)<br>)<br>)<br>) | Case No. |
| Plaintiff, | )<br>) | JUDGE |
| v. | )<br>) | |
| JOSEPH P. THOMAS, M.D., | )<br>) | <u>COMPLAINT – DEMAND FOR<br>JURY TRIAL</u> |
| Defendant. | ) | |

INTRODUCTION

1. The State of Ohio, by and through its Attorney General, Michael DeWine, submits this Complaint against Defendant, Joseph P. Thomas, M.D., and upon information and belief alleges the following:

PRELIMINARY STATEMENT

2. Defendant, Joseph P. Thomas, M.D., by deception, did obtain or attempt to obtain payments under the Ohio Medicaid Program to which the Defendant was not entitled pursuant to his provider agreement, or the rules of the federal government or the rules of the Ohio Medicaid director relating to the Ohio Medicaid Program. Defendant sought reimbursement from the Ohio Medicaid Program for medical and laboratory tests which

1

were not performed, and/or not reasonable or medically necessary. Defendant willfully received payments to which he was not entitled and/or in an amount greater than that to which he was entitled. Defendant also falsified laboratory test results and caused those tests to be billed to the Ohio Medicaid Program. Such conduct violates Ohio Revised Code sections 5164.35(B)(1)(a) – (B)(1)(d). As a result of this fraud, the State of Ohio's Medicaid Program has paid Medicaid monies to Defendant to which the Defendant was not entitled. Defendant was further unjustly enriched by these payments.

3. On June 12, 2013, Relator, Patricia Downes, filed a Complaint against Defendant in the United States District Court, Northern District of Ohio, Eastern Division, for violations of the False Claims Act, 31 U.S.C. § 3729, *et seq.*, on behalf of the herself and the United States pursuant to 31 U.S.C. § 3730(b)(1). On July 18, 2017, Plaintiff, the United States of America, filed its Complaint in Intervention as part of the qui tam action, Case 5:13cv-01298-JRA.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to its Supplemental Jurisdiction over the claims asserted in this Complaint as provided in 28 U.S.C. § 1367.

5. This Court has jurisdiction over the claims asserted in this Complaint pursuant to 42 U.S.C. § 1396b(q), which establishes the nationwide system of Medicaid Fraud Control Units (MFCUs).

6. This Court has jurisdiction over this Complaint and actions brought under State law pursuant to 31 U.S.C. § 3732(b) and at common law.

7. This Court has personal jurisdiction over the Defendant because the Defendant resides in the Northern District of Ohio and transacted business in the Northern District of Ohio where he engaged in the wrongful conduct.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) and 31 U.S.C. § 3732(a) because the Defendant resides in this district.

PARTIES

9. The Attorney General of Ohio brings this action on behalf of the Plaintiff, State of Ohio, pursuant to O.R.C. § 5164.35.  In 1965, Title XIX of the Social Security Act created the Medicaid Program. Medicaid is a federal and state governmentally funded health insurance program for the low-income, disabled, and elderly. The Ohio Department of Medicaid administers the Medicaid Program in Ohio.  In 1977, the Medicare/Medicaid Anti-Fraud and Abuse Amendment was adopted, which created a nationwide system of Medicaid Fraud Control Units (MFCUs).  O.R.C. § 109.85, passed in 1978, authorized the Ohio Attorney General to create the Ohio MFCU.  O.R.C. § 109.85 authorizes the Ohio Attorney General to investigate and prosecute any criminal or civil violations of law related to the Ohio Medicaid Program.

10. Defendant, Joseph P. Thomas, M.D., at all times relevant to this case, was a licensed practicing physician specializing in internal medicine.  Defendant also operated a group practice and an in-house laboratory that offered a variety of diagnostic tests.  Both his practice and in-house laboratory were physically located at 1445 Harrison Avenue NW, Suite 200, Canton, Ohio.  His employees included physicians, laboratory technicians, medical

assistants, and office staff. While operating his business, Defendant was a Medicaid provider of services or goods contracting with the State of Ohio through the Ohio Department of Medicaid (ODM), which administers the Ohio Medicaid Program, and the Ohio Department of Job and Family Services (ODJFS), which previously administered the Ohio Medicaid Program. The contract is known as the provider agreement.

MEDICAID PROGRAM

11. Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, et seq., established the Grants to States for Medical Assistance Programs, popularly known as the Medicaid Program, or simply, "Medicaid." Medicaid provides funding for medical and health-related services, equipment, and supplies to certain individuals and families with low incomes. Those eligible for Medicaid include pregnant women, children, low-income persons, and persons who suffer from disabilities. 42 U.S.C. § 1396d. Medicaid is a health care benefit program as defined under Title 18, Section 24(b), United States Code. Medicaid is a federal and state funded health insurance program, which is administered by the States. 42 U.S.C. § 1396b. If a state elects to participate in the Medicaid Program, the costs of Medicaid are shared between the state and the federal government. 42 U.S.C. § 1396a(a)(2). In order to receive federal funding, a participating state must comply with requirements imposed by the Social Security Act and regulations promulgated thereunder.

12. The State of Ohio participates in the Medicaid Program pursuant to 42 U.S.C. § 1396a and Ohio Administrative Code Chapter 5160 (formerly O.A.C. Chapter 5101). The United States Department of Health and Human Services (HHS) funds approximately 60 percent of

Ohio's Medicaid Program. The State of Ohio initially administered its Medicaid Program, (sometimes referred to as the "medical assistance program," or the "Ohio Medicaid Program") through ODM, and formerly through ODJFS.

13. In return for federal subsidies, the State of Ohio is required to administer the Ohio Medicaid Program in conformity with a state plan that satisfies the requirements of the Social Security Act and accompanying regulations. 42 U.S.C. §§ 1396 et. seq.; 42 C.F.R. § 431.10; 42 C.F.R. § 438.50; O.A.C. Chapter 5160. ODM, formerly ODJFS, received, reviewed, and obtained formal federal authority approval for its state plan and thus is authorized to make payment of Medicaid claims submitted to it by providers of health care.

14. In order to be reimbursed by the Ohio Medicaid Program for physician services, a provider rendering a service to Medicaid recipients must enter into a "provider agreement" with ODM/ODJFS in which the provider agrees to comply with all applicable state and federal statutes, regulations and guidelines. Each provider is then assigned a unique provider number, which is necessary to be eligible to bill and receive reimbursement for services rendered to Medicaid recipients.

15. Medicaid claims submitted directly to ODM/ODJFS are paid directly by ODM/ODJFS under a Fee for Service (FFS) system. Under the FFS system, the traditional billing and reimbursement method, providers charge for each medical service or unit provided to a patient. Therefore, a provider cannot be reimbursed for services that were not provided.

16. As part of the federally approved state plan, ODM has elected to contract with Medicaid Managed Care Organizations (MCOs) through contracts known as Contractor Risk Agreements (CRAs), which must conform to the requirements of 42 U.S.C. §§1395mm and §1396b(m), along with any related federal rules and regulations. 42 U.S. Code § 1396u-2.

MCOs are health insurance companies that provide coordinated health care to Medicaid recipients. The MCOs contract directly with healthcare providers, including hospitals, doctors, and other health care providers to coordinate care and provide the health care services for Medicaid recipients. Providers who contract with an MCO, are known as Participating Providers. These providers likewise must enter into a "provider agreement" with the MCO in which the Participating Provider agrees to comply with all applicable state and federal statutes, regulations and guidelines. Participating Providers are assigned a unique provider identification number, which is necessary to be eligible to bill and receive reimbursement for services rendered to Medicaid recipients. As part of the Ohio Medicaid Program, Medicaid MCOs and the Participating Providers must furnish medical and health-related services pursuant to the state plan. Pursuant to the CRAs, ODM distributes the combined state and federal Medicaid funding to the MCOs, which then pay Participating Providers for treatment of Medicaid recipients. As the administrator of the Ohio Medicaid Program, ODM must track all services received by recipients, whether enrolled directly with ODM or enrolled with a MCO. Therefore, Medicaid MCOs are required to submit to ODM encounter data, which includes detailed records of the services a Medicaid recipient received from a Participating Provider.

17. Pursuant to the rules and regulations of the Ohio Medicaid Program, which includes ODM and Medicaid MCOs, Medicaid will only pay for services that were actually performed by qualified individuals, which were medically necessary, and provided in accordance with Federal and State laws, rules and regulations, including anti-kickback laws.

18. In order to be reimbursed for services provided to Ohio Medicaid enrollees, a provider or Participating Provider must submit claims to ODM or the MCO using a standardized

5

process that includes standard claim forms and standardized coding to identify diagnoses and services provided.

19. Providers and Participating providers must submit claims for reimbursement for services provided to Medicaid enrollees directly to ODM or the MCO through either paper or electronic forms. On these forms, the provider must identify the services for which reimbursement is sought using standard, uniform code numbers such as CPT codes.

20. To obtain reimbursement from Medicaid for certain outpatient items or services, providers and suppliers submit claims using well-known and standard insurance processing codes to identify certain medical diagnoses and medical treatments and procedures. The American Medical Association assigned and published five-digit codes, known as the Current Procedural Terminology (CPT) and Healthcare Common Procedure Coding System (HCPCS) codes, that identified the services rendered for which reimbursement is sought. ODM and its MCOs have adopted the CPT Manual for the purpose of identifying services for which providers seek reimbursement. Each CPT code corresponds to a specific service as described in the CPT Manual.

21. Providers who seek reimbursement for conducting specific laboratory tests are required to use specific CPT codes. For example, providers who seek reimbursement for conducting blood tests are required to use specific CPT codes based on what the test is designed to analyze. For example, providers who seek reimbursement for conducting a blood test on patients, to analyze lipids, are required to use CPT code 80061. Providers who seek reimbursement for conducting a blood test to analyze creatinine levels are required to use CPT code 82570; to analyze for blood glucose levels providers are required to use CPT code 82947; to analyze hemoglobin A1C levels providers are required to use CPT code 83036; to

analyze natriuretic peptide levels providers are required to use CPT code 83880; to analyze complete blood cell count providers are required to use CPT code 85025; to analyze blood test clotting time providers are required to use CPT code 85610; and to analyze red blood cell sedimentation rates providers are required to use CPT code 85651.

22. Providers who seek reimbursement for conducting urinalysis testing on patients are required to use CPT code 81000. Providers who seek reimbursement for conducting urine microalbumin level testing on patients are required to use CPT code 82043.

23. Providers who seek reimbursement for conducting routine electrocardiogram (EKG) testing are required to use CPT code 93000.

24. Providers who seek reimbursement for conducting ultrasounds of the heart are required to use CPT code 93306. Providers who seek reimbursement for conducting ultrasound scanning of blood flow of both sides of the head/neck are required to use CPT code 93880. Providers who seek reimbursement for conducting Doppler ultrasound tests of the heart are required to use CPT code 93325.

25. Medicaid requires providers of such services to create and maintain documents supporting the claims they submitted, including patient medical records, assessment and treatment records for each member. 42 C.F.R. § 431.107(b)(1); O.A.C. § 5160-1-17.2(D).

26. Typically however, Providers and Participating Providers do not include the underlying medical records when submitting a claim to ODM or the MCO. Due to the enormous amount of claims being processed by the Ohio Medicaid Program each day, it is not feasible for ODM or MCO personnel to review and compare every recipient's medical records with every claim submitted for that recipient by the provider or Participating Provider. The Medicaid Program relies on providers and Participating Providers to comply with Medicaid

7

requirements and trust them to submit truthful and accurate claims. Generally, once a provider or Participating Provider submits a claim, the claim is paid promptly and directly to the provider or Participating Provider without any review of supporting documentation, including medical records. Thus, fraud detection and recovery efforts generally arise after payment.

## FACTS

27. Defendant was a licensed practicing physician specializing in internal medicine and operated his medical practice under the name Joseph P. Thomas, M.D.

28. Defendant also operated an in-house laboratory, which was physically located within his practice that offered a variety of diagnostic tests.

29. Defendant also operated a group practice that employed other physicians.

30. Defendant surrendered his medical license on or about October 5, 2014 and has not been licensed to practice since that date.

31. From on or about July 7, 2007, through on or about March 25, 2016, Defendant submitted over 49,000 claims, billed over $2.2 million, and received more than $858,000.00 from the Ohio Medicaid Program.

32. From on or about July 7, 2007, through on or about March 25, 2016, Defendant submitted approximately 29,952 claims, billed approximately $850,000.00, and received more than $300,000.00 from the Ohio Medicaid Program for the following medical and laboratory tests using CPT codes: 80061, 81000, 82043, 82570, 82947, 83036, 83880, 85025, 85610, 85651, 93000, 93306, 93325, and 93880.

33. The State of Ohio alleges that a majority of those claims for medical and laboratory tests were either medically unnecessary and/or never performed and thus were not properly payable by the Ohio Medicaid Program.

34. By way of example, Defendant submitted to and was paid by the Ohio Medicaid Program, the following claims for medical and laboratory tests that were not performed and thus not reimbursable by the Ohio Medicaid Program, pursuant to O.R.C. §5164.35(B)(1)(a) through (d):

| Claim Number | Patient | Date of Service | CPT Code Billed | Amount Paid | Date Paid |
|---|---|---|---|---|---|
| 6328860000 | N.C. | 11/20/12 | 83036 | $13.41 | 12/11/12 |
| 5797419200 | B.S. | 03/05/12 | 83036 | $13.41 | 4/24/12 |
| 5797419200 | B.S. | 03/05/12 | 85651 | $ 4.90 | 4/24/12 |
| 5864950200 | L.P. | 04/13/12 | 83036 | $13.41 | 5/22/12 |

35. By way of further example, Defendant submitted to and was paid by the Ohio Medicaid Program, the above mentioned claims for medical and laboratory tests that were not performed, and created falsified test results to justify the false claims that were not reimbursable by the Ohio Medicaid Program for N.C., B.S., and L.P, in violation of O.R.C. §5164.35(B)(1)(a) through (d).

36. By way of further example, Defendant submitted to and was paid by the Ohio Medicaid Program, the following claims for medical and laboratory tests that were not reasonable and/or medically necessary, thus not reimbursable by the Ohio Medicaid Program, pursuant to O.R.C. §5164.35(B)(1)(a) through (d):

| Claim Number | Patient | Date of Service | CPT Code Billed | Amount Paid | Date Paid |
|---|---|---|---|---|---|
| 110670338500 | S.C. | 3/3/11 | 80061 | $17.89 | 3/26/11 |
| 110670338500 | S.C. | 3/3/11 | 81000 | $4.45 | 3/26/11 |
| 110670338500 | S.C. | 3/3/11 | 85025 | $10.94 | 3/26/11 |
| 110670338500 | S.C. | 3/3/11 | 85651 | $5.00 | 3/26/11 |
| L216OHE03740 | M.K. | 7/25/12 | 81000 | $4.24 | 8/9/12 |

| | | | | | |
|---|---|---|---|---|---|
| L216OHE03740 | M.K. | 7/25/12 | 93000 | $19.34 | 8/9/12 |
| L216OHE03740 | M.K. | 7/25/12 | 85651 | $4.76 | 8/9/12 |
| L216OHE03740 | M.K. | 7/25/12 | 83880 | $46.01 | 8/9/12 |
| L216OHE03740 | M.K. | 7/25/12 | 83036 | $13.02 | 8/9/12 |
| L216OHE03740 | M.K. | 7/25/12 | 82947 | $5.26 | 8/9/12 |
| L216OHE03740 | M.K. | 7/25/12 | 82043 | $7.76 | 8/9/12 |
| L216OHE03740 | M.K. | 7/25/12 | 80061 | $17.04 | 8/9/12 |
| L216OHE03740 | M.K. | 7/25/12 | 82570 | $6.94 | 8/9/12 |

37. Office records and interviews of former employees of Defendant, revealed Defendant ordered testing on patients prior to meeting with the patients, and determining if there was a legitimate medical necessity to order the test.

38. Patient records reveal laboratory testing was performed on a repeated basis at frequent intervals despite normal values, a complete lack of medical necessity, lack of patient complaint, and little reference to justify the testing in the office notes.

39. This repeated testing suggests Defendant was maximizing his practice's revenue, instead of determining an appropriate plan of care for the individual patients.

40. Data analysis conducted by the Ohio Attorney General's MFCU indicated that Defendant was billing a high volume of labs and diagnostic exams compared to his peers.

41. Office records and interviews of former employees of Defendant, revealed Defendant billed high level CPT codes for office visits, where the documentation did not justify the higher level. This suggests Defendant was maximizing his practice's revenue, instead of billing the appropriate code.

42. Former employees of Defendant stated to law enforcement agents that Defendant would routinely order tests for patients being treated by other physicians in his group practice even though those physicians never ordered or authorized the tests.

43. Former employees of Defendant stated to law enforcement agents that Defendant would agree to write prescriptions for narcotics in exchange for patients agreeing to unnecessary medical and laboratory testing.

44. Office records and interviews of former employees of Defendant, revealed Defendant prescribed dangerous combinations of narcotics to patients without proper supervision or management of these patients.

45. Former employees of Defendant stated to law enforcement agents that Defendant would bill for tests not performed, and would fabricate test results to justify the false billings.

46. Former employees of Defendant stated to law enforcement agents that Defendant routinely billed for excessive and unnecessary tests on his patients including x-rays, EKGs, hemoglobin A1C level, red blood cell sedimentation rate, urine microalbumin level, complete blood cell count, blood glucose level, and manual urinalysis.

47. The State contends that Defendant by deception and/or willingly caused claims for payment to be submitted to the Ohio Medicaid Program (42 U.S.C. Chapter 7 Subchapter XIX), which includes "managed care entities" as defined by 42 U.S.C. § 1396u-2, to which he was not entitled.

## COUNT I

### Violation of O.R.C. § 5164.35(B)(1)(a) – Provider Offenses

48. Plaintiff incorporates by reference all preceding paragraphs 1 through 47 of this Complaint as if fully rewritten herein.

49. By the acts described above, the Defendant, by deception, as defined in O.R.C. § 5164.35(B)(2), did obtain or attempt to obtain payments under the Ohio Medicaid Program to which the Defendant was not entitled pursuant to his provider agreement, or the rules of

the federal government or the rules of the Ohio Medicaid director relating to the Ohio Medicaid Program in violation of O.R.C. § 5164.35(B)(1)(a).

50. The Ohio Medicaid Program paid the false or fraudulent claims because of the Defendant's acts, and incurred damages as a result.

51. Pursuant to O.R.C. § 5164.35(C), Defendant is liable to the State of Ohio for three times the amount of all damages sustained by the State of Ohio/Ohio Medicaid Program because of Defendant's conduct, plus interest at the maximum rate allowable for real estate mortgages under O.R.C. § 1343.01.

52. Pursuant to O.R.C. § 5164.35(C), Defendant is liable to the State of Ohio for a civil penalty of not less than five thousand dollars ($5,000.00) and not more than ten thousand dollars ($10,000.00) for each deceptive claim or falsification.

53. Pursuant to O.R.C. § 5164.35(C), Defendant is liable to the State of Ohio for all reasonable expenses which the Court determines have been necessarily incurred by the Plaintiff in the enforcement of O.R.C. § 5164.35.

## COUNT II

### Violation of O.R.C. § 5164.35(B)(1)(b) – Provider Offenses

54. Plaintiff incorporates by reference all preceding paragraphs 1 through 47 of this Complaint as if fully rewritten herein.

55. By the acts described above, the Defendant willfully received Medicaid payments to which he was not entitled.

56. The Ohio Medicaid Program paid the false or fraudulent claims because of the Defendant's acts, and incurred damages as a result.

57. Pursuant to O.R.C. § 5164.35(C), Defendant is liable to the State of Ohio for three times the amount of all damages sustained by the State of Ohio/Ohio Medicaid Program because of Defendant's conduct, plus interest at the maximum rate allowable for real estate mortgages under O.R.C. § 1343.01.

58. Pursuant to O.R.C. § 5164.35(C), Defendant is liable to the State of Ohio for a civil penalty of not less than five thousand dollars ($5,000.00) and not more than ten thousand dollars ($10,000.00) for each deceptive claim or falsification.

59. Pursuant to O.R.C. § 5164.35(C), Defendant is liable to the State of Ohio for all reasonable expenses which the Court determines have been necessarily incurred by the Plaintiff in the enforcement of O.R.C. § 5164.35.

## COUNT III

### Violation of O.R.C. § 5164.35(B)(1)(c) – Provider Offenses

60. Plaintiff incorporates by reference all preceding paragraphs 1 through 47 of this Complaint as if fully rewritten herein.

61. By the acts described above, the Defendant willfully received Medicaid payments in a greater amount than that to which he was entitled.

62. The Ohio Medicaid Program paid the false or fraudulent claims because of the Defendant's acts, and incurred damages as a result.

63. Pursuant to O.R.C. § 5164.35(C), Defendant is liable to the State of Ohio for three times the amount of all damages sustained by the State of Ohio/Ohio Medicaid Program because of Defendant's conduct, plus interest at the maximum rate allowable for real estate mortgages under O.R.C. § 1343.01.

64. Pursuant to O.R.C. § 5164.35(C), Defendant is liable to the State of Ohio for a civil penalty of not less than five thousand dollars ($5,000.00) and not more than ten thousand dollars ($10,000.00) for each deceptive claim or falsification.

65. Pursuant to O.R.C. § 5164.35(C), Defendant is liable to the State of Ohio for all reasonable expenses which the Court determines have been necessarily incurred by the Plaintiff in the enforcement of O.R.C. § 5164.35.

## COUNT IV

### Violation of O.R.C. § 5164.35(B)(1)(d) – Provider Offenses

66. Plaintiff incorporates by reference all preceding paragraphs 1 through 47 of this Complaint as if fully rewritten herein.

67. By the acts described above, the Defendant did falsify a report or document required by state or federal law, rule, or provider agreement relating to Medicaid payments.

68. The Ohio Medicaid Program paid the false or fraudulent claims because of the Defendant's acts, and incurred damages as a result.

69. Pursuant to O.R.C. § 5164.35(C), Defendant is liable to the State of Ohio for three times the amount of all damages sustained by the State of Ohio/Ohio Medicaid Program because of Defendant's conduct, plus interest at the maximum rate allowable for real estate mortgages under O.R.C. § 1343.01.

70. Pursuant to O.R.C. § 5164.35(C), Defendant is liable to the State of Ohio for a civil penalty of not less than five thousand dollars ($5,000.00) and not more than ten thousand dollars ($10,000.00) for each deceptive claim or falsification.

71. Pursuant to O.R.C. § 5164.35(C), Defendant is liable to the State of Ohio for all reasonable expenses which the Court determines have been necessarily incurred by the Plaintiff in the enforcement of O.R.C. § 5164.35.

COUNT V

<u>UNJUST ENRICHMENT</u>

72. Plaintiff incorporates by reference preceding paragraphs 1 through 47 of this Complaint as if fully rewritten herein.

73. This is a claim for the recovery of monies by which Defendant has been unjustly enriched.

74. By directly or indirectly obtaining government funds to which he was not entitled, Defendant was unjustly enriched, and is liable to account for and pay such amounts, or the proceeds therefrom, which are to be determined at trial, to the State of Ohio.

WHEREFORE, Plaintiff demands that judgment be entered in its favor and against Defendant as follows:

a. On COUNTS ONE, TWO, THREE, and FOUR triple the amount of Plaintiff's damages proven at trial, plus interest at the maximum rate allowable for real estate mortgages under O.R.C. § 1343.01;

b. On COUNTS ONE, TWO, THREE, and FOUR payment of a sum of not less than five thousand dollars ($5,000.00) and not more than ten thousand dollars ($10,000.00) for each deceptive claim or falsification;

c. On COUNTS ONE, TWO, THREE, and FOUR all reasonable expenses which the Court determines have been necessarily incurred by the Plaintiff in the enforcement of O.R.C. § 5164.35;

d. On COUNT FIVE in the amount of Plaintiff's damages plus prejudgment interest, and;

e. On ALL COUNTS for the costs of this action, and such other relief to which the Plaintiff may be entitled and such other relief that the Court deems just and proper.

Respectfully submitted,

Mike DeWine
Ohio Attorney General

/s/ Maritsa A. Flaherty
_____
Maritsa A. Flaherty (#0080903)
Susan R. Schultz (#0082537)
Senior Assistant Attorneys General
Ohio Attorney General
Health Care Fraud Section
150 East Gay Street, 17th Floor
Columbus, OH 43215
Telephone: (614) 466-0722
Fax: (866) 679-2054
Maritsa.Flaherty@OhioAttorneyGeneral.gov
Susan.Schultz@OhioAttorneyGeneral.gov

JURY DEMAND

Plaintiff demands a trial by Jury on all issues presented in the Complaint.

CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of September 2017 a copy of the foregoing document was filed electronically. Pursuant to Local Rule 4.2 and Fed. R. Civ. P. 4(d), the Plaintiff will attempt to initially serve the Defense via executing a Waiver of the Service of Summons.

/s/ Maritsa A. Flaherty
Maritsa A. Flaherty
Senior Assistant Attorney General

16